IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COREY RICHARDSON, | * | |
| Petitioner, | * | Criminal No. RDB-05-0597 |
| v. | * | |
| UNITED STATES OF AMERICA, | * | Civil Action No. RDB-12-1514 |
| Respondent. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

On March 23, 2006, a jury convicted Petitioner Corey Richardson ("Petitioner" or "Mr. Richardson") of possession of a firearm by a convicted felon (Count One), possession with intent to distribute cocaine base (Count Two), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 922(G)(1) & 924(c), and 21 U.S.C. § 841(a) (Count Three). Thereafter, this Court sentenced Petitioner to concurrent terms of 252 months and 240 months for Counts One and Two, respectively, and 300 months for Count Three, to run consecutive to the term for Count One.[1] Judgment, ECF No. 47.

On July 13, 2006, Petitioner noted an appeal (ECF No. 49) to the United States Court of Appeals for the Fourth Circuit. His appeal was initially dismissed pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure in August 2007. *See* Order, ECF No. 68. After Petitioner moved to reinstate the appeal, the Fourth Circuit affirmed Mr. Richardson's conviction on July 13, 2010, *see United States v. Richardson*, 387 F. App'x 422 (4th Cir. 2010),

---

[1] Due to Mr. Richardson's lengthy criminal record, he qualified as a Career Offender under the United States Sentencing Guidelines § 4B1.1, and an Armed Career Criminal pursuant to 18 U.S.C. § 924(c). *See* Judgment.

but on February 1, 2011 recalled the mandate, vacated the judgment, and reopened the case for the limited purpose of appointing counsel to represent Mr. Richardson at the *certiorari* stage (ECF No. 82). The Fourth Circuit reaffirmed this Court's Judgment the following day (ECF No. 84). Petitioner filed a writ of *certiorari* to the United States Supreme Court, but the petition was denied and his conviction became final on February 28, 2011. *See Clay v. United States*, 537 U.S. 522 (2003); *see also United States v. Segers*, 271 F.3d 181 (4th Cir. 2001).

On May 21, 2012, Petitioner filed the pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 91).[2] He raises several grounds to support his Motion, all of which center around his main contention that the police witnesses and prosecutors lied concerning the events leading to his arrest and eventual conviction, in an effort to frame him. In addition to the pending Motion to Vacate, Mr. Richardson also filed a Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 86). After a review of the record revealed that Petitioner's Motion to Vacate was likely untimely, this Court notified Petitioner of the issue and ordered him to provide information regarding his entitlement to equitable tolling within twenty-eight days of the date of the order, April 29, 2015. *See* Order, ECF No. 112. This Court granted Mr. Richardson's Motion for Extension (ECF No. 115) by marginal order (ECF No. 116), and granted a further extension on July 28, 2015 upon learning that Mr. Richardson had not received the marginal order due to his transfer to U.S.P. Beaumont. *See* Order, ECF No. 117.

On August 28, 2015, this Court received correspondence (ECF No. 118) and a "Motion Reply to Order" (ECF No. 119) from Mr. Richardson, in which he contended that

---

[2] Although the Motion to Vacate was filed on May 21, 2012, it is dated February 26, 2012. This discrepancy will be addressed *infra* in the analysis of Mr. Richardson's Motion to Vacate.

he was unable to access unspecified legal materials. This Court construed Petitioner's "Motion Reply to Order" as a request for discovery, and denied the request by order dated the same day. *See* Order, ECF No. 120. Mr. Richardson then filed a "Motion on Order" (ECF No. 122), and a "Motion on Timely" (ECF No. 123). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Petitioner Corey Richardson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 91) is DENIED; Petitioner's Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 86) is DENIED;[3] Petitioner's Motion on Order (ECF No. 122) is DENIED;[4] and Petitioner's Motion on Timely (ECF No. 123), construed as a response to this Court's Order of April 29, 2015, is MOOT.[5] In sum, Petitioner's nearly incomprehensible Motion to Vacate asserts numerous conclusory and unsupported allegations in an effort to renew his chief defense theory. Absent any factual development, Petitioner's claims must be dismissed.

## BACKGROUND

On December 20, 2005, a federal grand jury indicted Petitioner on charges of (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession with

---

[3] Mr. Richardson seeks a reduction of the sentence for Count Two—possession with intent to distribute cocaine base ("crack cocaine")—pursuant to 18 U.S.C. § 3582. He was sentenced to 240 months for Count Two, to run concurrently with the 250-month sentence of Count One. As any reduction in his sentence for Count Two would not affect the length of his overall sentence, Mr. Richardson is not eligible for the requested reduction.

[4] In Petitioner's "Motion on Order," he renews his request for discovery that this Court denied on August 13, 2015. As explained in the August 13, 2015 Order, a habeas petitioner must show good cause, *i.e.* establish a prima facie case for relief, before he is permitted to engage in discovery. *See Harris v. Nelson*, 394 U.S. 286, 290 (1969). Like his previous motion, Petitioner has again failed to establish a prima facie case for relief that would entitle him to discovery. Accordingly, his "Motion on Order" is DENIED.

[5] Mr. Richardson's "Motion on Timely" is properly construed as a response to this Court's Order of April 29, 2015, instructing Mr. Richardson to provide information as to his entitlement to equitable tolling from the one-year statute of limitations of 28 U.S.C. § 2255. After reviewing the "Motion on Timely," Mr. Richardson's § 2255 Petition remains untimely and he is not eligible for equitable tolling. However, as this Court is denying his Petition on other grounds, Mr. Richardson's "Motion on Timely" is MOOT.

intent to distribute cocaine base; and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). *See* Idictment, ECF No. 1. The charges stemmed from an incident on October 4, 2005 in which the Petitioner shot at Baltimore County police officers during a pursuit on foot. After Petitioner was seized, a search incident to arrest revealed that the Petitioner possessed bags of cocaine base and ammunition.

James Howard ("Mr. Howard"), Petitioner's court-appointed attorney, filed a Motion to Suppress (ECF No. 20), as well as two motions *in limine* (ECF Nos. 25 & 26), for which this Court held a lengthy motions hearing on March 9, 2006. After the hearing, this Court found that the police officers had probable cause to arrest Mr. Richardson. *See* Order, ECF No. 27. This Court denied Petitioner's Motion to Suppress, but only denied in part one motion *in limine* and granted the other motion *in limine*. *Id.* A jury trial commenced on March 13, 2006. At trial, the Government presented the following facts, as summarized in the Pre-Sentence Report ("PSR"):

> 8. On October 4, 2005, Baltiore County Officers responded to the 6800 block of Townbrook Drive, Woodlawn, Maryland for a call of shots fired. Officers learned that two suspects ran towards Windsor Mill Road. While responding to Windsor Mill Road, Officer Ellis, working in uniform, saw two males coming from the Corinthian Lounge. Once the suspects saw the Officer in police uniform, they fled in different directions. The Officer called out a foot chase. During the foot chase, Officers followed the Defendant Corey Richardson as he was running away from police. Officers announced police presence and asked the Defendant to stop. The Defendant refused.
>
> 9. During the chase, the Defendant brandished and discharged his handgun at Officer Hurt. Officer Hurt fired back. No one was hit during the gun battle. Officers Dill, Griffin, Kappes, and others eventually apprehended the Defendant. As the Officers were taking the Defendant to the ground,

the Defendant said he was going to shoot again. The Defendant struggled with Officers. Eventually, Officers removed a loaded two-shot Derringer, .38 caliber pistol from the Defendant's hand. Officers searched the Defendant after he was arrested and found in his pocket a white silk bag containing 15 live and 3 spent .38 caliber rounds. A forensic examination of the firearm and ammunition show that the three spent .39 caliber rounds in the Defendant's pocket were fired from the same .38 caliber gun retrieved from the Defendant's hand. In addition, Officers recovered from the Defendant's pocket another white silk bag containing 30 bags of crack cocaine (at least 4 grams but less than 5 grams).

10. The Defendant was transported to the precinct for processing. While at the precinct, the Defendant gave the false name of Kevin Smith. The Defendant also stated that he should not be chained to the wall like an animal for shooting at the police.

Pre-Sentence Report ¶¶ 8-10.

Mr. Richardson offered a different version of the events of October 4, 2005:

12. Officer Ellis observed two black males casually walking down Windsor Mill Road, approximately six minutes after and a mile distant from the original call of "shots fired" at Townbrook Apartments. The Officer claimed that the two black males matched the vague description of two black males leaving the Townbrook Apartments and heading towards St. Lukes Lane.

13. Officer Ellis was not responding to Windsor Mill Road. He was responding to the Townbrook Apartments.

14. Officer Ellis exited his vehicle with his weapon drawn and approached the two black males, who were doing nothing otherwise suspicious, in the parking lot of the Corinthian Lounge. With his weapon draw and in a crouching position, Officer Ellis yelled "Baltimore County Police." There was no direction given to stop or halt.

15. At no time did Mr. Richardson shoot at or threaten to shoot at the police. There were no discharged bullets from the firearm the government used as evidence. The only

> expended rounds recovered case from the police officer's
> firearm. Mr. Richardson did not have any drugs or a gun on
> October 4, 2005. Mr. Richardson did not give a false name
> and never made any statement that he shot at the police.

*Id.* ¶¶ 13-15 (emphasis in original). The jury subsequently convicted Mr. Richardson on all

three counts. *See* Jury Verdict, ECF No. 36.

Nearly one month before the sentencing hearing, this Court appointed Robert

Waldman ("Mr. Waldman") to represent Petitioner at sentencing, replacing Mr. Howard. *See*

Order, ECF No. 41. On July 11, 2006, this Court held a sentencing hearing. Due to his

criminal record, Petitioner qualified as a Career Offender and Armed Career Criminal.[6]

Although Mr. Richardson again denied that he had made any statement during processing

with respect to shooting at the police, this Court assured him that it did not consider the

alleged statement when determining his sentence. *See* Trial Tr. vol. 10, 1046-47, July 11,

2006. This Court sentenced Petitioner to concurrent terms of 252 months and 240 months

for Counts One and Two, respectively, and 300 months for Count Three, to run

consecutively to Count One, for a total sentence of 552 months. *See* Judgement, ECF No.

47. Thereafter, the Fourth Circuit affirmed Petitioner's convictions on direct appeal, *United*

*States v. Richardson*, 387 F. App'x 422, and the United States Supreme Court denied his writ of

*certiorari* on February 28, 2011.

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007)(citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate,

---

[6] Mr. Richardson had at least three prior convictions for felony drug trafficking, six convictions for battery or
resisting arrest, and a 1989 conviction under 18 U.S.C. § 924(c). Pre-Sentence Report ¶¶ 49, 52, 55, 79, 89.

set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack."  28 U.S.C. § 2255.  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

DISCUSSION

## I.      Petitioner's Motion is Untimely

Initially, this Court addresses whether Mr. Richardson has timely filed the pending Motion. All petitions for post-conviction relief pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). This limitations period is measured from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Finality attaches to a conviction when the United States Supreme Court "affirms [that] conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *United States v. Clay*, 537

U.S. 522, 527-28 (2003). Further, the "mail box rule" applies to Section 2255 petitions, thus an inmate's motion is considered timely if deposited in the prison's internal mailing system on or before the last day for filing. *Houston v. Lack*, 487 U.S. 266 (1988).

An otherwise time-barred petitioner may qualify for equitable tolling if he can show that, "due to circumstances external to the party's own conduct[,] it would be unconscionable to enforce the limitation against the party." *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). For equitable tolling to apply, the petitioner must demonstrate first that he has been pursuing his rights diligently, and second that extraordinary conditions stood in his way, thereby preventing timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)(*en banc*)).

In this case, Mr. Richardson's conviction became final on February 28, 2011, the date on which the United States Supreme Court denied his writ of *certiorari*. Thus, pursuant to 28 U.S.C. § 2255(f), he was required to file any motion for post-conviction relief by February 28, 2012. Yet, the pending Motion was not filed until May 21, 2012. Although the Motion bears Mr. Richardson's handwritten notation of a date—February 26, 2012—it includes no other details, such as a postal timestamp, indicating that the Petitioner filed the Motion within the requisite limitations period. Although the "mail box rule" applies to § 2255 petitions, Petitioner's Motion bears no sign that he had deposited it in the prison's internal mail system on or before February 28, 2011.

In response to the Government's and this Court's observations that his Motion is untimely, Mr. Richardson asserted that he had, indeed, filed within the one-year limitations

period. Reply, 1, ECF No. 110; *see also* Reply Attach. 1, 1-2, ECF No. 110-1. To support his contention, Mr. Richardson included a receipt of delivery marked February 29, 2012. Reply Attach. 1, at 3. This mailing was not Petitioner's Motion to Vacate under 28 U.S.C. § 2255, but rather a supplement (ECF No. 89) to the Motion for Retroactive Application of the Sentencing Guidelines (ECF No. 86) filed on November 2, 2011. While the supplement contains excerpts that appear to come from a § 2255 petition, it also includes arguments related to the motion filed in November 2011. It is a separate and distinct document from that filed on May 21, 2012.

This Court subsequently filed an Order (ECF No. 112) directing Mr. Richardson to submit information with respect to any entitlement to equitable tolling. Rather than providing the requested information, Mr. Richardson merely continued to repeat his earlier statement that he had complied with 28 U.S.C. § 2255(f). *See* Mot. on Timely, ECF No. 123. The Petitioner is *pro se*, thus he must be afforded a degree of latitude when construing his claims. *See Erickson*, 551 U.S. at 94. A liberal construction of his claims, however, does not bridge the gap between the February 28, 2012 limitations deadline and the May 21, 2012 filing of his Motion to Vacate. As Mr. Richardson does not identify any grounds for equitable tolling, his Motion to Vacate is untimely. Accordingly, his Motion to Vacate may be DENIED on this basis alone. Nevertheless, this Court will address his substantive claims.

## II.      Petitioner's Substantive Claims

Even if Petitioner had timely filed his Motion to Vacate pursuant to 28 U.S.C. § 2255, he fails to demonstrate that his sentence was "imposed in violation of the Constitution or laws of the United States," as required by § 2255. Mr. Richardson seeks post-conviction

relief on four specific grounds.[7] Specifically, he argues: (1) he received ineffective assistance of counsel in violation of his Sixth Amendment rights; (2) the Government committed prosecutorial misconduct by knowingly using false testimony; (3) this Court abused its discretion by striking Juror 355; and (4) Officer Pundt knowingly included false testimony in his investigative report on Petitioner's arrest. Each ground will be addressed in turn.

### a. Ineffective Assistance of Counsel

Petitioner first contends that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Due to the confused nature of his claims for relief, it is difficult to discern the precise ways in which he allegedly received ineffective assistance of counsel. It appears, however, that he asserts four primary failures of his defense counsel. First, Mr. Richardson claims that his trial counsel, Mr. Howard, permitted the inclusion of the statement, "I shouldn't be chained to the wall like an animal for shooting at the police," in the Pre-Sentence Report ("PSR"). Mot. to Vacate, at 7. Second, he contends that trial counsel failed to follow his instructions to (1) impeach Officer Pundt for alleged perjury; (2) call a particular expert, Federal Bureau of Investigation ("FBI") Agent John Kilty; (3) address an unspecified statement by Officer Hoppert; (4) raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986); and (5) object to prosecution evidence. Third, he argues that counsel was "sleeping behind the wheel." Mot. to Vacate, at 9. Finally, Petitioner asserts that counsel failed to prepare for and appear at Petitioner's sentencing hearing.

In order to state a claim for ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v.*

---

[7] As will be discussed *infra*, Petitioner also asserts numerous incoherent and rambling claims in the addenda attached to his Motion to Vacate.

*Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance" prong, of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687. It requires a showing that, "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient. Rather, a petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief.  *See id.* at 687.

    1.  *Inclusion of Petitioner's Statement in the PSR*

Mr. Richardson contends that he received ineffective assistance of counsel due to the inclusion of a particular statement in the PSR. The PSR, in its summary of the facts presented by the Government at trial, states "[t]he Defendant was transported to the precinct for processing. While at the precinct, the Defendant gave a false name of Kevin Smith. The Defendant also stated that he should not be chained to the wall like an animal for shooting at the police." Pre-Sentence Report ¶ 10. Although unclear, Petitioner appears to argue that he never made the statement at issue and specifically told counsel not to allow the probation officer, Lawrence Gagen, to include the statement. *See* Mot. to Vacate, at 9. He contends that counsel fabricated the statement. *See id.* This argument is hardly new, as Mr. Richardson repeatedly denied having made the statement throughout his trial and at sentencing. *See* Trial Tr. vol. 6, 437-43, Mar. 20, 2006.

Petitioner's claim fails to surmount even the first hurdle of the *Strickland* test—the performance prong. Neither his attorney at trial nor his attorney at sentencing[8] performed below an objective standard of reasonableness. This Court admitted the statement, but Mr. Richardson's counsel vigorously disputed its authenticity as evidence supporting the defense theory that the policie officers conspired to frame Mr. Richardson. *See id.* (this Court's admission of the statement); Trial Tr. vol. 5, 22, Mar. 15, 2006 (discussing the defense theory that Mr. Richardson was framed); Trial Tr. vol. 9, 950, Mar. 23, 2006 (counsel stating, "it should make us all a little nauseous to think about what we've heard in this trial from the police officers."). Further, he offers no facts to support his allegation that his trial counsel somehow lied in connection with the statement.

At sentencing, counsel again objected to the statement, particularly its inclusion in the PSR. Trial Tr. vol. 10, at 1045-46. Yet, the statement was included in the PSR merely as a component of the Government's version of events. In fact, this Court assured Petitioner that the statement had no bearing on his sentence. Trial Tr. vol. 10, at 1046-47. Both court-appointed attorneys provided "reasonable professional assistance," *Strickland*, 466 U.S. at 689, as they objected to the statement's admission and conveyed Mr. Richardson's denial throughout the proceedings. A reasonable attorney can do no more than object when potentially prejudicial evidence is presented.

### 2. *Failure to Follow Instructions*

Mr. Richardson asserts several ways in which his counsel disregarded his instructions at trial. Under current law, criminal defendants have the right to make certain "personal" or

---

[8] As noted *supra*, Mr. Richardson was represented by James Howard at trial, and Robert Waldman at sentencing.

"fundamental" decisions. As the Fourth Circuit has explained, "[a]s to those limited issues—pleading guilty, waiving a jury, taking the stand, and appealing a conviction or sentence—'an attorney must both consult with the defendant and obtain consent to the recommended course of action.'" *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (quoting *Florida v. Nixon*, 543 U.S. 175, 187 (2004)). With respect to tactical decisions, however, there is no such absolute requirement. Counsel may proceed without the defendant's consent on issues that "primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks omitted). When a criminal defendant seeks post-conviction relief based upon an alleged error with respect to such a tactical decision, "[t]he reasonableness of [that] decision actually made by counsel is of course subject to challenge, but the decision is not unreasonable simply because the client expressed a contrary view." *Chapman*, 593 F.3d at 369; *see also Strickland*, 466 U.S. at 689 (1984) ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy").

Petitioner asserts five instances[9] in which counsel failed to follow his instructions, yet each claim is devoid of any factual development or contradicted by the record, nor does he state any resulting error. First, Mr. Richardson argues that trial counsel failed to follow Mr. Richardson's instruction to impeach Officer Pundt for alleged perjury. Trial counsel, however, called Officer Pundt as a defense witness and subjected him to rigorous

---

[9] Petitioner's brief is rambling and difficult to follow, thus this Court will consider only those arguments clearly stated and fairly discernible.

examination on the subject of his investigative report. *See* Trial Tr. vol. 8, 824-40, Mar. 22, 2006. Although Rule 607 of the Federal Rules of Evidence permits the impeachment of any witness, Mr. Richardson provides no argument indicating *how* he would have benefitted from the impeachment of Officer Pundt. Mr. Howard's examination of Officer Pundt attempted to reveal the holes and missing information in the investigative report. *See, e.g.*, Trial Tr. vol. 8, at 838-39.[10] Counsel's approach to a particular witness is well within the bounds of trial strategy and tactics. Moreover, it appears that Petitioner wishes to assign error to his counsel's failure to convince the *jury* of Petitioner's chief defense theory—that all officers, including Officer Pundt, were lying. Mr. Howard certainly conveyed this theory, but the jury's contrary conclusion did not deny Mr. Richardson a fair trial. *See* Trial Tr. vol. 9, at 950 (in which Mr, Howard stated to the jury that, "it should make us all a little nauseous to think about what we've heard in this trial from the police officers.").

Next, Petitioner contends that counsel disregarded his instruction to call a particular expert, FBI Agent John Kilty ("Agent Kilty"), to testify in Petitioner's favor. The decision regarding which witnesses to call is a question of strategy, as it "is a classic tactical decision left to counsel . . . even when the client disagrees." *Chapman*, 593 F.3d at 369 (internal

---

[10] When examining Officer Pundt about the report:

> Mr. Howard: Sir, you've indicated in your report here in describing items found and also located was a white cloth bag containing multiple baggies of a white crystalline substance. Did you recover that bag?
> Officer Pundt: No, I did not.
> Mr. Howard: Where did you get the information from?
> Officer Pundt: From Detective Kappes and Griffin.
> Mr. Howard: And so when you say that there was sufficient quantity to indicate selling narcotics, you hadn't actually seen that?
> Officer Pundt: Not at the time.

Trial Tr. vol. 8, at 838-39.

citations omitted). Mr. Richardson identifies Agent Kilty as a "ballistics expert," Mot. to Vacate, at 10, but provides no details as to the expected content of Agent Kilty's testimony, or how this testimony would create a reasonable probability of a different outcome at trial. This Court thus can evaluate neither the reasonableness of trial counsel's tactical decision, nor any prejudice to the Petitioner, as requried by *Strickland.*

Third, Mr. Richardson alleges that trial counsel  failed to follow Mr. Richardson's instruction to address a certain statement by Officer Hoppert. Mr. Richardson offers no facts indicating to which statement he refers, thus this Court need not investigate this claim any further. *See United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."). Under the liberal construction accorded to *pro se* petitioners, Mr. Richardson could be referring to Officer Hoppert's statement that "after Mr. Mr. Richardson was taken to the lockup, he made a statement to the effect that he beter get a lot of time because when he gets out, he's going to shoot one of the cops." Trial Tr. vol. 7, 460, March 21, 2006 (letter from the Government notifying Mr. Howard of Officer Hoppert's statement).[11] Officer Hoppert, however, never mentioned the Mr. Richardson's alleged comments when he testified at trial. Trial Tr. vol. 7, at 463. The Petitioner claims that counsel failed to address the statement, yet the record reveals otherwise. Mr. Howard argued vehemently against the statement's admission and the late hour at which the Government notified Mr. Howard of the statement. *See* Trial Tr. vol. 7, at 460-65. This Court did not admit the statement, thus Petitioner did not suffer any discernible prejudice.

---

[11] Due to the late timing of the discovery, the Government stated that it would not use this statement in its case-in-chief, but it reserved the right to introduce the statement if Mr. Richardson elected to testify. Trial Tr. vol. 7, at 460. Mr. Richardson did not take the stand to testify.

Fourth, Petitioner claims that counsel failed to raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), with respect to unspecified jurors. In *Batson*, the Supreme Court held that a prosecutor may not use a peremptory challenge in a criminal case to exclude jurors solely on the basis of race. *Id.* Once again, Petitioner includes no facts to support this claim, instead merely stating that counsel failed to make such a challenge, against his wishes. Absent any evidence, this Court cannot even identify the allegedly offending jurors or peremptory challenges. As such, this claim must be dismissed. *See Thomas*, 221 F.3d at 437.

Finally, Mr. Richardson contends that counsel failed to object to unspecified prosecution evidence. The decision whether or not to object to certain evidence falls squarely within the trial strategy category. *See Sexton v. French*, 163 F.3d at 885. Although this Court may evaluate the reasonableness of counsel's decision, *Chapman*, 593 F.3d at 369, facts must be presented that would enable such an evaluation. In this case, Mr. Richardson neither identifies the offending Government evidence, nor provides *any* facts to help guide this Court in its inquiry. Merely stating a generalized allegation of incompetence is not sufficient to sustain a claim for ineffective assistance of counsel. *See Thomas*, 221 F.3d at 437.

### 3. *Counsel Asleep at the Wheel*

Mr. Richardson alleges that his trial counsel providing ineffective assistance by "sleeping behind the wheel." Mot. to Vacate, at 9. He contends that this unprofessional conduct caused him to suffer "pure prejudice." *Id.* Yet, he neglects to include any facts to support this allegation. The accusation that trial counsel was "sleeping behind the wheel" is just one allegation among many similar claims peppered throughout Petitioner's brief without any factual development. Although an attorney who "sle[pt] at the wheel" during his

16

client's trial could be the functional "equivalent to no counsel at all," *Strickland*, 466 U.S. at 703 n.2 (quoting *Javor v. United States*, 724 F.2d 831, 834 (9th Cir. 1983)), Petitioner must provide *some* facts to support his claim. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *Thomas*, 221 F.3d at 437 (explaining that "vague and conclusory allegations contained in a § 2255 petition" do not suffice to sustain a claim)). Absent any such evidence, Mr. Richardson's claim must be dismissed.

4.   *Failure to Prepare for or Attend the Sentencing Hearing*

Finally, Petitioner contends that trial counsel's failure to prepare for and attend his sentencing hearing deprived him of effective assistance of counsel. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This guarantee, however, does not require that the defendant's attorney be the same person at different stages of the judicial proceedings. Mr. Richardson was represented at trial by James Howard. Robert Waldman assumed representation on June 19, 2006, and entered his appearance shortly thereafter. *See* Notice of Appearance, ECF No. 42. As Mr. Richardson's counsel, Mr. Waldman submitted amended exceptions to the PSR (ECF No. 46) and then represented Mr. Richardson at his sentencing hearing on July 11, 2006. *See* Trial Tr. vol. 10, at 1029. As Mr. Howard did not represent Mr. Richardson during the sentencing phase of his trial, Mr. Richardson had no rights under the Sixth Amendment to demand that Mr. Howard prepare for or attend the sentencing hearing. Accordingly, Petitioner's fourth claim of ineffective assistance of counsel must be dismissed.

**b.  Prosecutorial Misconduct**

In his second claim, Petitioner contends that the Government's attorneys knowingly introduced false testimony, in violation of his constitutional rights. This claim stems from his belief, asserted at trial, that Officers Graves, Kappes, Hoppert, and Pundt lied about the circumstances of his arrest in an effort to target and frame him.

To succeed on a claim of prosecutorial misconduct due to the use of perjured testimony, a petitioner must demonstrate: "(1) the testimony was false . . . ; (2) the Government knew the testimony was false . . . ; and (3) there is a reasonable probability that the false testmiony could have affected the verdict[.]" *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (internal citations omitted). Raising a factual issue as to the falsity of the testimony at issue is not sufficient, as the Government must also have *known* of the perjury. *Roane*, 378 F.3d at 400 (affirming the district court's dismissal of petitioners' claim of prosecutorial misconduct where petitioners offered no evidence with respect to the Government's knowledge). Further, the petitioner must offer concrete facts to support each prong, as "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice" to establish prosecutorial misconduct. *Id.* (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)); *see also Dyess*, 730 F.3d at 359 (quoting *Thomas*, 221 F.3d at 437 ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.")).

In this case, Mr. Richardson simply fails to allege any evidence that the testimony at issue was false, or that the Government knew that it was false. Rather than offering any evidence of falsity, Mr. Richardson levies accusations of misconduct unsupported by any facts. Mr. Richardson's theory—the officers conspired to lie and frame him—was asserted at

trial and necessarily rejected by the jury when it convicted the Petitioner on all three counts.

With respect to the Government's knowledge of the alleged perjury, Mr. Richardson asserts

that the Government did, indeed, possess this knowledge, but again provides no facts to

support his accusation. In the absence of any such evidence, Petitioner's claim must be

dismissed. After all, "[a]iry generalities, conclusory assertions and hearsay statements" cannot

sustain a claim of prosecutorial misconduct. *Roane*, 378 F.3d at 400 (quoting *Aiello*, 814 F.2d

at 113).

### c.  Abuse of Discretion

Mr. Richardson's third claim asserts that this Court "struck juror 355 for cause in as

much as juror 355 was allowed to unfairly judge litigators trial due process rights was

compromised[.]" Mot. to Vacate, at 7. Although largely incoherent, it appears that Petitioner

contends that this Court's decision to strike Juror 355 constituted an abuse of discretion.

The striking of this juror purportedly violated Petitioner's due process rights, although

Petitioner omits any details of *how* his rights were violated.

It is well established that a trial court's resolution of juror-related issues is entitled to

"special deference." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (citing *Bose Corp. v. Consumers

Union of U.S., Inc.*, 466 U.S. 485, 500 (1984); *Marshall v. Lonberger*, 459 U.S. 422, 434-35

(1983)). As a "trial judge has very broad discretion in deciding whether to excuse a juror for

cause," his determination "will not be overturned except for manifest abuse of that

discretion." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 222 (4th Cir. 1989) (citing *United States

v. Grandison*, 780 F.2d 425, 533 (4th Cir. 1985), *vacated on other grounds*, 479 U.S. 1076 (1987)).

Essentially, a claimant must show "extreme" facts to support a finding that the district court

abused its discretion when keeping or excusing a juror. *See United States v. Redding*, 422 F. App'x 192, 194 (4th Cir. 2011) (no abuse of discretion where record does not indicate any "actual bias or . . . extreme situation warranting removal" of the juror); *see also United States v. Hager*, 721 F.3d 167, 190 (4th Cir. 2013).

This Court excluded Juror 355 when he admitted that he had recently been convicted of marijuana possession and possession of drug paraphernalia in Washington County, Maryland. Trial Tr. vol. 6, at 143-44. Further, he had been convicted of fourth-degree burglary in 2003, and misdemeanor theft and possession of marijuana in 1999. Trial Tr. vol. 6, at 143-45. Finally, Juror 355 asked to be excused due to the burden of traveling from his home in Washington County to Baltimore City, as he did not have a working vehicle. Trial Tr. vol. 6, at 145. Given these facts, this Court can find no evidence indicating that the excusal of Juror 355 constituted an abuse of discretion. Accordingly, his third claim must be dismissed.[12]

### d. Alleged Perjury of Officer Pundt

Mr. Richardson's fourth claim is a renewal of his chief theory at trial—namely, the police officers lied about the facts underlying his arrest and continued to lie when testifying at trial. Specifically, he claims that Officer Pundt, who received the call that a shooting had occurred, used false testimony in the report he authored on Mr. Richardson's arrest. Mot. to Vacate, at 7; *see also* Trial Tr. vol. 8, at 834. Although Officer Pundt was not an eye witness to Mr. Richardson's arrest, he was the original police officer assigned to respond to the call that

---

[12] This Court also notes that Mr. Richardson raised this argument on direct appeal to the Fourth Circuit, but it was rejected when that court affirmed his conviction. *See United States v. Richardson*, 387 F. App'x 422. A defendant, however, may not "recast under the guise of collateral attack, questions fully considered" on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

shots had been fired. *See* Trial Tr. vol. 8, at 841-42. He then used the testimony of the officers involved in the arrest and the subsequent investigation to construct his report. Trial Tr. vol. 8, at 840-43. This theory of police conspiracy and lies, however, served as the chief defense theory at trial and on direct appeal. Yet, the jury necessarily rejected this defense when it convicted Mr. Richardson on all three counts of the Indictment. Moreover, the United States Court of Appeals for the Fourth Circuit also rejected this theory when it affirmed Mr. Richardson's conviction on direct appeal. *See United States v. Richardson*, 387 F. App'x 422. When an issue or theory was fully and fairly litigated on direct appeal, a petitioner may not raise that same issue or theory on collateral attack. *Boekenhaupt*, 537 F.2d at 1183; *see also Roane*, 378 F.3d at 396 n.7 (noting that, absent "any change in the law that warrants [the court's] reconsideration," a petitioner may not raise claims addressed and rejected on direct appeal). Mr. Richardson is thus precluded from re-asserting his chief defense theory in his § 2255 petition.[13]

### e.  Additional Claims

In addition to Mr. Richardson's four specific claims, he asserts approximately fourteen[14] rambling and incoherent claims for relief. These additional claims are nearly incomprehensible, but from the heading of each claim, it appears that they mirror the claims

---

[13] Moreover, Petitioner's argument that Officer Pundt committed perjury rests solely on conclusory accusations. He provides no evidence supporting his belief in the false testimony, instead simply stating that Officer Pundt (and his fellow officers) lied. Such "vague and conclusory allegations . . . may be disposed of without further investigation by the District Court." *Dyess*, 730 F.3d at 359 (quoting *Thomas*, 221 F.3d at 437); *see also Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (explaining that "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Even if Mr. Richardson had not had the full and fair opportunity to litigate his chief defense theory on direct appeal, the omission of any evidence to support this theory warrants its dismissal.

[14] Although difficult to discern, it appears that Petitioner repeats several of his claims (and supporting accusations) throughout the many pages of his brief.

Mr. Richardson raised on direct appeal.[15] *Compare* Mot. to Vacate, at 2-3, *with* Mot. to Vacate, at 16-47. Like his allegations supporting the four specific claims, these additional claims are jumbled and devoid of any factual development. A petitioner, however, "is expected to state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (internal quotation marks omitted). Given this lack of any argument or factual support beyond vague and conclusory allegations, Petitioner's additional claims must be dismissed. *See Dyess*, 730 F.3d at 359-60 (holding that the district court did not err in considering only those claims supported by facts and argument, rather than reviewing all forty claims asserted by the petitioner, where the additional claims consisted solely of unintelligible and conclusory allegations).

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner Corey Richardson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 91) is DENIED; Petitioner's Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 86) is DENIED; Petitioner's Motion on Order (ECF No. 122) is DENIED; and Petitioner's Motion on Timely (ECF No. 123), construed as a response to this Court's Order of April 29, 2015, is MOOT. In sum, Petitioner's nearly incomprehensible Motion to Vacate asserts numerous conclusory and unsupported

---

[15] For example, Petitioner asserts, *inter alia*, various Fourth Amendment exclusionary rule claims. *See* Mot. to Vacate, at 16-47. Claims arising under the exclusionary rule, however, are cognizable on collateral review only if the petitioner received no opportunity for full and fair litigation of the claims on direct appeal. *Stone v. Powell*, 428 U.S. 465, 494-95 n.37 (1976); *see also United States v. Johnson*, 457 U.S. 537, 562 n.20 (1982). Mr. Richardson raised these claims on direct appeal, and the Fourth Circuit soundly rejected them. *See United States v. Richardson*, 387 F. App'x 422.

allegations in an effort to renew his chief defense theory. Absent any factual development, Petitioner's claims must be dismissed.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.


Dated:          September 28, 2015

                                        _____/s/_____
                                        Richard D. Bennett
                                        United States District Judge